UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : Case No. 1:21-cr-00360 (DLF) |
| v. | : |
| | : |
| BRITTIANY ANGELINA DILLON, | : |
| | : |
| Defendant. | : |

**GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the Acting United States Attorney for the District of Columbia, respectfully submits this supplemental sentencing memorandum in connection with the above-captioned matter. Pursuant to the Court's order of November 1, 2020, the government identifies cases that already have proceeded to sentencing, and which demonstrate that the government's sentencing recommendation would not result in unwarranted sentencing disparities among similarly-situated defendants.

**ARGUMENT**

The government's recommendation for the defendant is consistent with its recommendation for other similarly situated defendants. The discussion of other cases below explains how imposition of the recommended sentence—three months of home detention, a three-year probation term, 60 hours of community service, and $500 in restitution—would not create unwarranted sentencing disparities with other Capitol breach defendants.[1]

The defendant has pleaded guilty to Count Three of the Superseding Information, charging her with disorderly and disruptive conduct in Capitol grounds, a violation of 40 U.S.C.

---

[1] Attached to this supplemental sentencing memorandum is a table providing additional information about the sentences imposed on other Capitol breach defendants. That table also shows that the requested sentence here would not result in unwarranted sentencing disparities.

§ 5104(e)(2)(D). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C.A. § 3553(6), do apply, however.

For one thing, although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences—such as how a defendant entered the Capitol, how long she remained inside, the nature of any statements she made (on social media or otherwise), whether she destroyed evidence of his participation in the breach, etc.—help explain the differing recommendations and sentences. And as that discussion illustrates, avoiding unwarranted disparities requires the courts to consider not only a defendant's "records" and "conduct" but other relevant sentencing criteria, such as a defendant's expression of remorse or cooperation with law enforcement. *See United States v. Hemphill*, 514 F.3d 1350, 1365 (D.C. Cir. 2008) (no unwarranted disparity regarding lower sentence of codefendant who, unlike defendant, pleaded guilty and cooperated with the government).

Moreover, assessing disparities, and whether they are unwarranted, requires a sufficient pool of comparators. In considering disparity, a judge cannot "consider all of the sentences not yet imposed." *United States v. Godines*, 433 F.3d 68, 69–71 (D.C. Cir. 2006). "The most a judge can do is consider those other sentences that do exist," and "[t]he comparable sentences will be much smaller in the early days of any sentencing regime than in the later." *Id.*; *see generally United States v. Accardi*, 669 F.3d 340, 346 (D.C. Cir. 2012) ("Without more, two allegedly similar cases constitute too small a sample size to support a finding of an 'unwarranted disparity' in sentences.").

In cases for which the Sentencing Guidelines apply, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009). *See id*. ("A sentence within a Guideline range 'necessarily' complies with § 3553(a)(6)."). Because the Sentencing Guidelines do not apply here, the sentencing court cannot readily conduct a disparity analysis against a nationwide sample of cases captured by the Sentencing Guidelines.

Even in Guidelines cases, sentencing courts are permitted to consider sentences imposed on co-defendants in assessing disparity. *E.g., United States v. Knight*, 824 F.3d 1105, 1111 (D.C. Cir. 2016); *United States v. Mejia*, 597 F.3d 1329, 1343-44 (D.C. Cir. 2010); *United States v. Bras*, 483 F.3d 103, 114 (D.C. Cir. 2007). The Capitol breach was *sui generis*: a mass crime with significant distinguishing features, including the historic assault on the seat of legislative branch of federal government, the vast size of the mob, the goal of impeding if not preventing the peaceful transfer of Presidential power, the use of violence by a substantial number of rioters against law enforcement officials, and large number of victims. Thus, even though many of the defendants were not charged as conspirators or as codefendants, the sentences handed down for Capitol breach offenses is an appropriate group for purposes of measuring disparity of any future sentence.

As the number of sentences in the Capitol breach misdemeanor cases increase and the pool of comparators grows, the effect on sentences of obviously aggravating considerations should become more apparent. The same is true for obviously mitigating factors, such as a defendant's efforts to prevent assaults on police, prompt acceptance of responsibility, and expressions of genuine remorse.

The defendant argues that this case is most comparable to the case of *United States v. Jessica Bustle*, 1:21-cr-258-TFH, in which Ms. Bustle was sentenced to twenty-four months of

probation, with two months of home detention, 40 hours of community service, and $500 in restitution. (1:21-cr-258-TF8 Dkt. 42.) This is less than the three years of probation, three months of home detention, and 60 hours of community service that the government recommends here.[2] While Ms. Bustle's case and the defendant's case share some features in common, there are key differences which warrant sentencing the defendant to a longer period of probation and of home detention.

Jessica Bustle wrote about the events of January 6, 2021 on Facebook, where—proud of her conduct—she called the Vice President of the United States a "traitor" and acknowledged that she and others "stormed the Capitol." (1:21-cr-238-TFH Dkt. 39 at 8.) She also mischaracterized the riot as peaceful, perpetuated the false claim that "[t]his election has been undermined and stolen," and called for a revolution. *Id.* at 9. As the government noted in *Bustle*, this conduct underscored both the need for general deterrence, to prevent future crimes by Ms. Bustle, and specific deterrence, as Ms. Bustle "held out her own experience as a reason for others to ignore indisputable video evidence of violence." *Id.*

Here, although there is no evidence that the defendant posted social media messages promoting or glorifying the riot,[3] she the directly anticipated *violence* in text messages before January 6. Moreover, she described the coming conflict *violently*, in a way that Jessica Bustle's Facebook posts—whether before or after the riot—did not. (Dkt. 21 at 2-5.) For example, she wrote of Chinese infiltration of the United States government, foresaw a "legit military coup . . .

---

[2] The defendant does not appear to object to the imposition of a greater community service requirement. (Dkt. 26 at 3.) Indeed, she requests 100 hours of community service in lieu of any period of home detention. *Id.*

[3] Notably, however, the defendant did not have a Facebook account at the time of the riot and deleted her Instagram account shortly after January 6. In an interview with the FBI, the defendant said she deleted her Instagram account because other online accounts of hers had been hacked.

against the deep state," anticipated anarchy and civil war, and compared the opposition to a demon fighting back against an exorcism. (Dkt. 21 at 2-3.) The difference in rhetoric also helps contextualize a key difference between Jessica Bustle and this defendant. While Jessica Bustle entered the building after the Capitol's rotunda doors had been breached, no evidence indicates that she witnessed the breach. (1:21-cr-238-TFH Dkt. 39 at 2.) Here, in contrast, the defendant was at the Capitol earlier, walked right up to a police line, and tried to enter the Capitol. As she did so, she would have seen other rioters assaulting and resisting police officers. (Dkt. 21 at 4.)

In addition, there are two critical aggravating factors at issue in this case: the defendant's attempt to enter the Capitol with a group of rioters that tried to push through a police line and the defendant's statements to her fellow rioter. These factors make this case like *United States v. Andrew Bennett*, 1:21-cr-00227-JEB, and *United States v. Thomas Vinson and Lori Vinson*, 1:21-cr-00355-RBW.

In the *Bennett* case, the government recommended the same sentence requested here: three months of home detention, three years of probation, 60 hours of community service, and $500 in restitution. The Court imposed a sentence of 24 months of probation and $500 in restitution. Two days before the riot, Bennett posted on Facebook "You better be ready chaos is coming and I will be in DC on 1/6/2021 fighting for my freedom!" On the Capitol grounds, before entering, he observed other rioters becoming violent with officers. Then, he entered the Capitol through the Senate Wing Door at 2:14 p.m., two minutes after it had been breached. While inside the Capitol, he posted to Facebook and live-streamed videos, celebrating his entry; he also admonished other rioters not to destroy property or fight with officers. (1:21-cr-00227-JEB Dkt. 24 at 5.)

In the *Vinson* case, for Thomas Vinson, the government also requested the same sentence recommended here. For Lori Vinson, the government requested 30 days of incarceration and $500

of restitution. For each defendant, the court imposed 60 months (five years) of probation, a $5,000 fine, and $500 in restitution. The Vinsons entered the Capitol building through the Senate door approximately five minutes after nearby windows were broken. They were part of a group that overwhelmed a police line in the Crypt, although they were did not personally assault officers when the line was overwhelmed. They also watched and apparently recorded video of a battle between rioters and police at the rotunda doors. After the riot, Lori Vinson sat for numerous interviews in which she expressed pride in participating in the riot and said that she would do it again if given the chance. (1:21-cr-355-RBW Dkt. 44 at 2-13.)

Like this defendant, Andrew Bennett, Thomas Vinson, and Lori Vinson would have witnessed firsthand as other rioters crashed against police lines or points of access to the Capitol's interior—even if they, like this defendant, did not personally assault anyone, or destroy any property, during these conflicts. Just as the Vinsons were part of a group that overwhelmed a police line within the Capitol, the defendant was part of a group that could have, but failed to, breach a police line that was defending the Senate Carriage Door. Like this defendant, Bennett and the Vinsons described the riot as a cause that they had to fight for. Though less public (because sent directly to another rioter), this defendant's text messages were more specific in their anticipation of violent revolution. Unlike Bennett and the Vinsons, this defendant turned away from the Senate Carriage Door after meeting with police resistance, but at least when entering the Capitol, those defendants did not meet with the same resistance that she did. If the other rioters had successfully breached the Senate Carriage Door, the defendant likely would have entered the Capitol.

The defendant's comparison of her case to *United States v. Danielle Doyle*, 1:21-cr-324-TNM and *United States v. Valerie Ehrke*, 1:21-cr-00097-PLF, is unpersuasive. (Dkt. 26 at 3.) Doyle entered the Capitol through a broken window about 10 minutes after that window was

breached. She clearly knew that the window had been broken but was not part of a group that swarmed the window as others tried to break it. Doyle also did not have social media posts or text messages comparable to the defendant's texts. (1:21-cr-00324-TNM Dkt. 27 at 2-5.)[4] Ehrke entered the Capitol at 3:11, through the North Door, which had been breached before her arrival. She entered behind a number of other people. Then, within about a minute, Ehrke and others were pushed out of the Capitol by police officers. She was at the back of that group, furthest from the officers. Ehrke did post about her entry into the Capitol on Facebook, but her posts do not contain the sort of incendiary rhetoric that the defendant used.[5] The government also noted that, in a letter to the government, Ehrke expressed remorse about the events at the Capitol on January 6. (1:21-cr-00097-PLF Dkt. 20 at 2-5.)[6]

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the

---

[4] In Doyle, the government sought a sentence of three years of probation, two months of home detention, 60 hours of community service, and $500 in restitution. Instead, the Court ordered two months of probation, a $3,000 fine, and $500 in restitution.

[5] In *Ehrke*, the government requested three years (36 months) of probation, 40 hours of community service, and $500 in restitution. Ehrke was sentenced to three years (36 months) of probation and $500 in restitution.

[6] Early in this investigation, the Government made a very limited number of plea offers in misdemeanor cases that included an agreement to recommend probation, including in *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164(RCL); *United States v. Valerie Elaine Ehrke*, 1:21-cr-00097(PFF); and *United States v. Donna Sue Bissey*, 1:21-cr-00165(TSC). The government is abiding by its agreements in those cases, which total only 5 out of more than 260 plea offers made to date, but has made no such agreement in this case. *Cf. United States v. Rosales-Gonzales*, 801 F.3d 1177, 1183 (9th Cir. 2015) (no unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6) between defendants who plead guilty under a "fast-track" program and those who do not given the "benefits gained by the government when defendants plead guilty early in criminal proceedings") (citation omitted).

result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## CONCLUSION

Given the spectrum of conduct at issue on January 6, 2021, there are few cases of other Capitol breach defendants who have proceeded to sentencing and whose conduct matches the defendant's. The requested sentence would not result in unwarranted sentencing disparities.

Respectfully submitted,

CHANNING D. PHILLIPS
ACTING UNITED STATES ATTORNEY

By:   */s/ Michael J. Romano*
MICHAEL J. ROMANO
Trial Attorney, Detailee
IL Bar No. 6293658
555 4th Street, N.W.
Washington, D.C. 20530
202-307-6691
michael.romano@usdoj.gov